911 F.2d 736
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Lloyd G. PERRY, Plaintiff-Appellant,
v.
Linda K. BARNARD, Sheldon D. Breskow, Sherill Colvin, Daniel
G. Kelley, Jr., Clifford Mashmeyer, James McDonald, Jr.,
James Puckett, Wesley W. Ratliff, Jr., Itsia Rivera, Sariah
B. Davies, Bruce Kotzan, Hansford Mann, James T. Neal, C.
Corydon Randall, Randal T. Shepard, Thomas H. Singer, Howard
S. Young, Jr., Rabb Emison and Russ Hart, Defendants-Appellees.
 No. 89-3575.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 31, 1990.*
Decided Aug. 17, 1990.
 
 Before COFFEY and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 Plaintiff-appellant, Lloyd G. Perry, appeals the dismissal of this action under 42 U.S.C. Sec. 1983 brought against Defendants-appellees, various members of the Judicial Nominating Study Commission for the Indiana Supreme Court, the Indiana Supreme Court Disciplinary Commission and its staff, and two past presidents of the Indiana State Bar Association (Hart and Emison). The district court granted Hart's and Emison's motion to dismiss for failure to state a claim upon which relief could be granted under Fed.R.Civ.P. 12(b)(6). The district court dismissed the remaining defendants finding that Perry's allegations against them had not satisfied constitutional standing requirements. The district court also enjoined Perry from filing any further lawsuits against defendants for actions involved in this case, and awarded attorney's fees as monetary sanctions against Perry under Rule 11 of the Federal Rules of Civil Procedure. We affirm.
 
 I.
 
 2
 Perry filed this lawsuit in 1988, seeking some 72 million dollars in damages from defendants. Perry's basic claim is that the defendants denied him due process by failing to discipline various attorneys and judges whom Perry alleges colluded against him and defrauded him in prior actions he filed in Indiana state courts. These attorneys and judges are not parties to the present suit. Perry previously sued them in federal court, and the courts, including this one, reached a similar result as the district court in this case. See Perry v. Gresk, No. 86-1765, (7th Cir. November 21, 1986) (unpublished order).
 
 
 3
 Because Perry appeals from the district court's dismissals on the pleadings, we accept as true all of Perry's well-pleaded allegations and reasonable inferences drawn from them. Love Church v. City of Evanston, 896 F.2d 1082, 1085 (7th Cir.1990); FMC Corp. v. Boesky, 852 F.2d 981 (7th Cir.1988). The series of events leading to this appeal began in 1980, when Perry was divorced from his wife and when he was having problems with his business. The legal battle surrounding the divorce led Perry to believe that his lawyer had colluded with his wife's lawyer "to clean him out." Furthermore, Perry alleges that tremendous court fraud pervaded the divorce proceedings, as well as the court proceedings which accompanied the bankruptcy of his business. Perry sought to have the attorneys and judges whom he perceived to have swindled him and misrepresented him disciplined by the various defendants. He was told by representatives of the disciplinary commission and the judicial nominating committee that each complaint was dismissed for failure to state an appropriate case for discipline. He contends, however, that the only reason they were dismissed was because he was proceeding pro se, and that defendants wilfully failed to carry out their duty to discipline. After some time, Perry contacted defendants Emison, who was President of the ISBA in October 1986, and Hart, who was President of the ISBA in August 1987. Neither of them acted on Perry's request to help him have the previously mentioned lawyers and judges disciplined.
 
 
 4
 In dismissing the case as to defendants Hart and Emison, the district court found that the ISBA presidents were not acting under color of state law in refusing to aid Perry, and thus, relief under 42 U.S.C. Sec. 1983 was unobtainable. The district court also noted that there were standing problems with the suit against Hart and Emison, although the court did not base its holding on that ground. As to the rest of the defendants, the court found that Perry's allegations had not established that he was injured by any of the defendants' actions. Perry's alleged injuries were caused by the lawyers and judges who he claimed defrauded him. Furthermore, suit against the defendants in this case would not affect the outcome of the prior proceedings in which Perry was injured. The court concluded that Perry had presented only a "generalized grievance," which is insufficient to create standing.
 
 II.
 
 5
 On appeal Perry argues that the eleventh amendment did not bar his suit against the members of the nominating commission and the disciplinary committee[1] and that because the ISBA is an arm of the state, defendants Hart and Emison were acting under color of state law when they refused to help him obtain the disciplinary action he sought. Appellees, including Hart and Emison, argue that Perry lacks constitutional standing to assert his claims against them.[2]
 
 
 6
 This case requires us to make, even as to defendants Hart and Emison, the threshold determination of whether Perry has standing to bring this suit. Those who do not possess standing under Article III of the constitution may not litigate in the federal courts. Love Church, 896 F.2d at 1084 (citing Valley Forge College v. Americans United for the Separation of Church and State, 454 U.S. 464, 475-76 (1982)). As we recognized in Love Church, "[t]he concept of standing does not lend itself easily to strict rules and facile application." Love Church, 896 F.2d at 1084. Yet we also stressed that the law in this area has developed to the extent that we require, at a minimum, that a plaintiff who invokes the jurisdiction of the courts allege that he has (1) suffered personal injury; (2) fairly traceable to the defendant's allegedly unlawful conduct; (3) likely to be redressed by the requested relief. Id. at 1085 (citing cases). Furthermore, a plaintiff does not have standing to seek redress for "generalized grievances." Rather, the plaintiff must describe a distinct and palpable injury that is neither abstract nor conjectural nor merely hypothetical. Id. at 1085.
 
 
 7
 In this case, Perry alleges that the various defendants denied him due process by not disciplining (and in the case of Hart and Emison, not helping him to seek discipline of) attorneys and judges whom he perceived had injured him in his prior lawsuits. Perry's complaint runs headlong into the article III standing requirement.
 
 
 8
 Initially, Perry has failed to allege a "palpable" injury. We are unable to ascertain any basis upon which to conclude that the defendants' refusals to discipline the various attorneys and judges involved in Perry's state-court litigation was detrimental to Perry in any tangible manner. Perry may feel personally slighted by defendants' decisions; however, there is no basis for any claim of economic damage resulting from defendants' actions, let alone the 72 million dollars Perry claims. Cf. Love Church, 896 F.2d at 1086 (no standing where existence of economic damage is possible yet speculative, because vague economic damages are "precisely the type of 'abstract' or 'conjectural' allegations spurned by the Supreme Court's [cases]"). Furthermore, accepting as true Perry's allegations that he was defrauded by the attorneys and judges who were involved in the litigation of his state court cases, we are unable to trace these injuries to defendants. Indeed, none of these defendants were involved Perry's state-court litigation. Even presuming that Perry satisfies prongs one and two of the standing requirement, there is no indication that requiring the defendants to discipline his various antagonists (a dubious proposition, in any event, since whether a state disciplines its own attorneys is a matter of state law) would redress Perry's injuries. Finally, Perry's complaint concedes that he was told by some of the defendants that his disciplinary actions were insufficient. Thus, Perry was not denied access to the state's disciplinary process. We are of the opinion that Perry has failed to allege a sufficient injury to invoke the jurisdiction of the federal courts.
 
 
 9
 As an adjunct to dismissing the case, the district court issued a permanent injunction against Perry to restrain him from filing any further lawsuits, without court permission, against the defendants in this action, as well as against the defendants in the case of Perry v. Gresk, discussed above. The scope of the injunction is narrowly tailored to prohibit lawsuits by Perry involving the same facts as this case and Gresk.
 
 
 10
 Perry argues that the district court mistakenly believed--at the behest of counsel for appellees Hart and Emison--that this case and Gresk are the same case and thus the injunction was inappropriate. We disagree. Although Perry is correct in his assertion that this case and Gresk are not factually identical, they arise out of the same circumstances--Perry's unsuccessful litigation in Indiana's courts. Furthermore, the district court's rationale in issuing the injunction in this case was not based on any mistaken belief in the court below that Perry had filed two identical lawsuits--indeed, Judge Tinder's order indicates to the contrary. Rather, Judge Tinder sought to restrain Perry from any further harassment of these defendants and those in Gresk, with what the judge felt was his "obsession" with his unsuccessful state court litigation. That obsession is demonstrated by the record on appeal in this case, a case which was dismissed at the pleading stage. The record consists of some four volumes containing 119 docket entries reaching well over 1,000 pages, most of which are Perry's repeated frivolous motions and the appellees efforts defending against them.[3] Indeed, one entry consists of over 100 pages of xeroxed newspaper articles regarding Perry's claim of bias against District Judge Brooks, who was originally assigned to this case.
 
 
 11
 Clearly, injunctive relief to halt repetitive, frivolous and vexatious litigation is within the power of both the district court and of this court. Miller v. United States, 868 F.2d 236, 241 (7th Cir.1989); Green v. Warden, 699 F.2d 364, 367-69 (7th Cir.1983). As we noted in Green, "[judicial] supervision of the federal courts implies the responsibility and the duty to act whenever necessary to obviate problems which affect the proper administration of justice." Green, 699 F.2d at 368. This is certainly such a case. Perry's actions in the court below demonstrate his desire to litigate and relitigate every aspect of this case, as if he believed that filing repeated motions arguing points already disposed of might change the district judge's decision. Although Perry "is acting pro se, he knew or should have known [in light of Gresk and the case law governing 42 U.S.C. section 1983[4]], that his position was groundless." Miller, 868 F.2d at 240.
 
 
 12
 The district court issued a carefully tailored injunctive order against Perry which prohibits only his ability to sue the named defendants in this case and those in Gresk. Under the circumstances, we conclude that the district court's action was reasonable.
 
 
 13
 Finally, Perry disputes the district court's imposition of attorney's fees as monetary sanctions against him pursuant to Rule 11 of the Federal Rules of Civil Procedure. We first reiterate that Perry's pro se status will not automatically excuse sanctionable behavior. Rule 11 " 'appl[ies] to anyone who signs a pleading motion or other paper.' " Vukadinovich v. McCarthy, 901 F.2d 1439, 1445 (7th Cir.1990) (quoting Fed.R.Civ.P. 11, Notes of Advisory Committee on Rules, 1983 Amendment). Indeed, we affirmed monetary sanctions against Perry in the Gresk litigation.
 
 
 14
 We review a district court's award of Rule 11 sanctions under a deferential standard, and we will affirm the district court's award "unless it is based on clear errors of fact or it is an abuse of discretion." Kapco. Mfg., Inc. v. C & O Enterprises, Inc., 886 F.2d 1485, 1491 (citing Mars Steel Corp. v. Continental Bank, N.A., 880 F.2d 928, 931-33 (7th Cir.1989) (en banc)).
 
 
 15
 The first award of sanctions against Perry relates to his filing of an affidavit in support of his motion for recusal of the trial judge. Judge Brooks ruled that the affidavit was insufficient to demonstrate bias. Subsequently, Perry alleged that the affidavit he filed with the district court had been tampered with and altered. He also claimed that the same tampering had been perpetrated against the copies of the affidavit that he mailed to the other parties in the case. The district court held a hearing on the tampering claim and issued copious findings of fact and concluded that Perry's tampering charge was unsubstantiated and had been made "without his having conducted a reasonable inquiry as to the facts upon which he was making the accusations...." The court found that the tampering charge was a "falsehood" and was done knowingly, in violation of Rule 11. The court ordered monetary sanctions against Perry in the amount of $500.00.
 
 
 16
 We have carefully considered the district court's findings in regard to the tampering charge and find that the court's findings of fact are well supported in the record. Perry's charges were unfounded and we are confident he was well aware of the fact. It is interesting to note that Perry admits in his brief on appeal that he had no proof of the tampering of the affidavit. We affirm the award of sanctions as to the tampering allegation.
 
 
 17
 At the close of the litigation, the district court also awarded attorney's fees of $1000 as a sanction under Rule 11 to counsel for the defendants. The district court did this as a deterrent response to the "abusive and improper things that Perry did throughout the course of this litigation." Perry's improprieties included the unfounded or unsupported tampering allegations, as well as his voluminous other filings in the case which, in our opinion, were a waste of the court's time in reviewing the same. Under these circumstances, we refuse to hold that the district court's second order of sanctions an abuse of discretion. Brown v. Federation of State Medical Bds. of the United States, 830 F.2d 1429, 1439 (7th Cir.1987).
 
 
 18
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 The district court noted it's belief that Perry's suit was barred by the eleventh amendment as well as the various immunity doctrines; however, the court based its dismissal on standing grounds
 
 
 [2]
 Although, Hart and Emison were dismissed under Fed.R.Civ.P. 12(b)(6), the district court noted in his order of dismissal that Perry's suit against them presented standing difficulties. We, of course, may affirm the district court on any ground if the record discloses a fair basis for doing so. Klingman v. Levison, 877 F.2d 1357, 1360 n. 3 (7th Cir.1989)
 
 
 [3]
 Now, on appeal, Perry has filed a five volume appendix to his brief, also consisting of over 1,000 pages
 
 
 [4]
 Perry's filings in the district court and in this court show a sophisticated, if misconceived, understanding of the law